## CHICAGO, R. I. & P. RY. Co. *v.* DENVER & R. G. R. Co.

*(Circuit Court, D. Colorado.  December, 1890.)*

1. RAILROAD COMPANIES — CONTRACT — ASSIGNMENT OF CONTRACT FOR USE OF ROADS.

   A contract between the C., R. I. & C. R. Co. and defendant company, giving the former the right to use the latter's tracks, depots, etc., stipulated that the contract should be binding on the lessees, assigns, grantees, and successors of each company during the continuance of their franchises, and provided that the former company could assign its interest in the contract only by sale, lease, or consolidation of its own property. *Held*, that an assignment or conveyance by the C., R. I. & C. Co. of its interest in the contract by virtue of leases, sales, and consolidation of its property, carried with it all the rights of said company under the contract.

2. SAME — ESTOPPEL.

   Where a railroad company which has granted to another company the right to the joint use of its track, depots, etc., allows the grantee and assignee of the latter to enter upon and continue in such possession and use, it is practically a construction of the power of the company to assign its rights under the contract.

3. SAME — CONSTRUCTION OF CONTRACT.

   Complainant's assignor, being engaged in building a railroad from the east, with the intention of bringing it to Colorado Springs, or, possibly, direct to Denver, entered into a contract with defendant company for the use of its tracks, depots, etc., which provided that complainant's assignor should have the full, equal, joint, and perpetual possession and use of all defendant's tracks, buildings, stations, sidings, and switchings on and along its line of railway "between and including Denver" and South Pueblo, meaning and intending to include all its railway and appurtenant property "between and at the points aforesaid." *Held*, that the contract gives complainant the right to use the depot grounds and property of defendant in Denver for the handling of its freight and passenger business, without respect to the road over which it may haul its cars. HALLETT, J., dissenting.

In Equity.

*Thomas F. Withrow*, *M. A. Low*, and *A. E. Pattison*, for complainant.

*E. O. Wolcott*, *J. F. Vaile*, and *G. W. Easley*, for defendant.

MILLER, Justice.  This suit is one brought in the chancery branch of the circuit court of the United States for this district by the Chicago, Rock Island & Pacific Railway Company against the Denver & Rio Grande Railroad Company.  The object of the bill is to enforce certain rights which the Chicago & Rock Island Company, as I shall call it generally, claims to the use of what is called the "terminal facilities" of the Denver end of the road of the Denver & Rio Grande Railroad Company.  The rights thus asserted grow out of a contract originally made between the Denver & Rio Grande Railroad Company and the Chicago, Rock Island & Colorado Railway Company.  It concerned the use of the Denver & Rio Grande Railroad, which was then in operation between Pueblo and Denver—a distance of 120 miles almost, north and south—by the other company, which was being built from the east to connect with the Denver & Rio Grande Railroad at some point on this line.  The construction of that contract is the subject-matter which we have to decide, and is the foundation of the difference between the two railroads,—I say between the two railroads; I mean the Chicago & Rock Island Railway Company, which claims to have become invested with all the rights concerning the matter now in controversy which the Chicago, Rock Island & Colorado Railway Company had by the original contract.

v.46F.no.3—10

One of the points raised in the case is that this is not a sound proposition; that the Chicago, Rock Island & Pacific Railway Company, being a totally different company from the Chicago, Rock Island & Colorado Railway Company, has not become possessed of the rights which the contract between the two latter companies conferred upon the Chicago, Rock Island & Colorado Railway Company. I do not know how much importance the defendants in this case, the Denver & Rio Grande Railroad Company, attached to that proposition. I think there are two sufficient answers to it, which show that the Chicago, Rock Island & Pacific Company has the rights which were conceded, in regard to the present matter in issue, originally to the Chicago, Rock Island & Colorado Railway Company, the party who made the original contract. One of these reasons is found in section 9, art. 3, of the original contract between the two railroad companies who are parties to it. Section 9 is as follows:

"This contract shall attach to and run with the railways of the respective parties during the corporate existence of each, and of all extensions of such existence, by renewal or otherwise, and shall be binding upon the lessees, assigns, grantees, and successors of each during the continuance of their several corporate franchises: provided, however, that the Chicago Company can assign its interest in this contract only by sale, lease, or consolidation of its own property."

The allegations of the bill, and further facts presented in the papers before us, satisfy me that the Chicago Company—that is, the original contracting company—did convey or assign its interest to the Chicago, Rock Island & Pacific Railway Company by virtue of leases, sales, and consolidation of its property. If there were any doubt upon that branch of the subject, it would, perhaps, be removed, for the purposes of this suit at all events, by the fact that the Denver & Rio Grande Railroad Company has permitted the Chicago, Rock Island & Pacific Company, the present plaintiff, to exercise all the rights granted by this contract to the Chicago & Colorado Railway Company, and does permit it to exercise them to this day, and has never controverted their right to exercise such rights as belonged to the original contracting parties. That has been in operation for several years, so that it is a practical construction of the power of the original contracting party, the Chicago, Rock Island & Colorado Company, to assign, and the Chicago, Rock Island & Pacific Company to receive the benefit of, that contract.

I pass from that subject with the simple statement that, in the existing state of things, the rights of the Chicago, Rock Island & Pacific Company are such as were conferred by this contract on the Chicago, Rock Island & Colorado Railway Company. Those rights are summed up in the first section of article 1 of the contract, a section which is short, terse, and, it seems to me, is clear. It is as follows:

"Article 1. The Denver Company covenants, promises, and agrees to and with the Chicago Company:

"Section 1. It [that is, the Denver Company] hereby lets the Chicago Company into the full, equal, joint, and perpetual possession and use of all its tracks, buildings, stations, sidings, and switches on and along its line of

railway between and including Denver and South Pueblo, excluding its shops at Burnham, meaning and intending thereby to include in the description aforesaid all and every portion of *its railway and appurtenant property between and at the points aforesaid, and all improvements and betterments thereof, and additions thereto, which may be jointly used by the parties, as hereinafter provided."

It would be difficult to devise language more explicit and more comprehensive than this. It is a grant to the Chicago Company, in terms, at least, in perpetuity, of the equal and joint possession and use of something. That is the nature of the power and interest granted by the Denver Company to the Chicago Company. It is the equal. This equality must have reference to the two companies; there is nobody else contracting. That they shall be equally, jointly, and perpetually in possession and use of what? Now, having defined the nature of the power granted, —the interest granted,—we find it equally explicit when it comes to saying in what that interest has vested,—what property is to be covered by it; namely, its tracks, buildings, stations, sidings, and switches (those are very minute particulars) on and along its line of railway between and including Denver and South Pueblo. That is very minute and very particular, so far as to exclude any doubt about the point of terminus. It is not between Denver and South Pueblo, but it goes further, and says: "Including Denver and South Pueblo, and excluding its shops at Burnham,"—tells what is to be excluded; meaning and intending to include in the description aforesaid all and every portion of its railway and appurtenant property between and at the points aforesaid, and all improvements and betterments thereof, and additions thereto. As I have already said, it would be difficult to find any language more capable of conveying such an interest as they did convey in all the property appurtenant to that railroad, except the shops at Burnham. Well, what is charged by the Rock Island & Pacific Railway against the Denver & Rio Grande Railroad Company is that they have given notice to the plaintiff that they propose to exclude it from the benefits secured by that section in their buildings, its terminal facilities at Denver; and the Rock Island Railway Company asks this court, by injunction, to prevent them from doing that. They say that they are running every day into Denver, and into the depot at Denver, or into the yards, where the connection is made at Denver with other roads, trains which the Denver & Rio Grande Railroad Company propose to exclude and prevent them from running in. If the question presented to us was that there never was any want of proper compliance with its contract on the part of the plaintiff in this case, we could enter into that question, and settle it; but such is not the case that is before us. It is one of a much higher grade. It is claimed by the Denver & Rio Grande Railroad Company that this contract did not oblige them to carry for the original contracting party any freight, passengers, or other subject of railroad traffic than such as might come to the city of Colorado Springs. It is claimed that there was no real right in the "Chicago Railway," as it is called in this contract, to take up or to land the property, traffic,

freight, or passengers at the Denver end of this road at all; that it must enter, as I understand, by Colorado Springs, and that they have no right to enter upon the use of this road anywhere else; and, if they are not correct in that rigid construction of the contract, they insist that the cars which the Chicago, Rock Island & Pacific Railway Company now run into this yard of the Denver & Rio Grande Railroad Company are no part of the traffic which is included in this contract. The Chicago & Colorado Railway Company evidently suppose that, wherever it ran cars carrying passengers or freight that came to the Denver & Rio Grande Railroad Company, it had a right to use the tracks, terminals, and depots of that company from Denver to Pueblo. It is now said that because the Chicago & Rock Island Railway Company, which obtained the benefit of that contract, is bringing trains with passengers and freight over another road to Denver, part of the way, it is therefore excluded from the contract. It is not my opinion that such a construction of the contract gives to the plaintiff the equal and joint possession and use of that part of the Denver & Rio Grande Railroad which constitutes the tracks at its terminus. I think that was made a part of the road that was conveyed, and I am of the opinion that by the conveyance the Chicago & Colorado Company came into the use and control of the Chicago, Rock Island & Pacific Company by virtue of the assignments and sales and consolidations I have already alluded to. I think that that included the right to run its cars, its passenger cars and its freight cars, and its freight into the Denver & Rio Grande depot, although it came over—was hauled over—somebody's else road. I think any other construction is a narrow and destroying use of these enlarged terms. I don't see why people put such things into contracts unless they mean them. What can they mean, if they don't mean the use of the terminals at the end of the road, both at Pueblo and Denver? If the contract has any qualifications or conditions to that use, it must be explicit and clear, because the language in which the grant was made admits of nothing of the kind.

I do not propose to go into those parts of the contract which are supposed to limit and qualify, and make exceptions to the general language of the first section of the contract, further than to say, in general terms, that the whole of the contract seems to me divisible into two or three purposes and objects. The first one is to define what was conveyed, and the terms on which it was conveyed; and the second had relation to some matters of expenses in the running of the road. In regard to the interest in the road, the contract provides that the cost of what has been thus granted or let by the Denver & Rio Grande Railroad Company shall be estimated, as it stood then, at $3,000,000, and an estimate of what the Rock Island Company should pay for the use of that road, which had been built by the Denver & Rio Grande Railroad Company, is made in the contract, and it is stated how much they shall pay. That, like the other part of the contract, is a perpetual obligation, as I understand it, and the Rock Island Company was to pay the interest on this sum forever, whether they used the road much, or whether they used it lit-

tle; and there is no provision in the contract implying that the amount of interest which they shall pay—which that road shall pay—on account of the original construction of this road from Denver to Pueblo, including both ends of it, shall be diminished or changed or modified in any way, with a solitary exception, and that is, that there is an express provision that the Denver & Rio Grande Railroad Company may permit other companies to come into the use of that piece of road upon terms which would be satisfactory to it, and, I believe, the Rock Island Company; but, at all events, whatever these new companies shall pay for the use of this piece of road is to go to diminish the sum which the Rock Island Company is to pay in the way of interest on that part already constructed. It is also provided that the Rock Island Company shall pay one-half of all the taxes that the Denver & Rio Grande Railroad Company is to be subjected to; and the whole of that contract very clearly shows that, as to the cost of this road, as to the taxes which shall accrue, as to improvements which may be necessary to be made, the Rock Island Company shall pay a certain proportion of that cost, in the way of interest, to the Denver Company. So that it has bought by contract the right to the use of that railroad from one end of the line mentioned to the other, and including both ends, and it is under contract to pay for it, and that whether it loses or makes by it. Whether the Denver & Rio Grande Railroad Company becomes a success or a failure, this company agrees to pay—the plaintiff is bound to pay—its proportion of the interest and the cost of all this road, and of the taxes which may accrue upon it.

But there was another consideration in the matter, and that was, that there are certain expenses appurtenant to running the road,—to keep it going,—and those cannot be estimated by what has been done in the past. They cannot settle at once, on the basis of 50 years, what it would cost to supply clerks and agents and firemen and trackmasters, and all that kind of thing; that is to be estimated by some other, different plan, and the contract goes on to specify how that is to be paid for. I do not enter into these matters, because I simply say that they are additional sums to be paid by the Chicago & Rock Island road for the running of the institution, or its current expenses, which were not paid for when its use was then bought. Now, as regards the first part of the contract, I do not find in any of the subsequent provisions for the payment of running expenses of officers, watchmen, trackmen, engineers, and all that kind of thing—I do not see in the provisions for these things—anything which modifies the right of the road as granted in the original section; and if these were made conditions precedent to the use of the road, as they are not, I do not think that the Denver and Rio Grande Railroad could enforce the payment which is stipulated for in regard to these matters by its own action in excluding the Chicago & Rock Island Railway. It may be the subject of reference, as is provided in one of the provisions or sections. It might be the subject of suit if the Rock Island road did not pay what it ought to pay for these secondary and current expenses. It could be made to pay by suit. No al-

legations that it is insolvent. Perhaps some kind of suit might be instituted by the Denver & Rio Grande Company for specific performance, for all I know, so as to prevent continuous suits; but I do not think that any of these arrangements, which relate to compensation for the current expenses of the conduct of this road, affect or determine, or are important in construing, the original contract by which the interest in the Denver & Rio Grande Railroad Company is conveyed to plaintiffs.

I think that is about all I have to say on the subject. I do not agree to the construction of the contract by which the Chicago, Rock Island & Colorado Railway Company, the original contractor, was bound to connect with this railroad only at Colorado Springs as at all feasible; nor do I believe in any limitation upon the right of the Chicago, Rock Island & Pacific Railway Company to use the Denver & Rio Grande Railroad at all. Nor is there a limitation upon that right, except that it shall be equal and joint with the Denver & Rio Grande Railroad, and must, of course, be so conducted as to have the regard of these rights as well as its own; and, with this view of the subject, I do not believe that the Denver Company has the right to exclude the Rock Island & Pacific Railway Company from the use of its yards and its buildings, which are appurtenant to, and a part of, the Denver & Rio Grande Railroad at Denver.

As I understand,—as this is my view of the matter,—although differing from Judge HALLETT, it is my duty to grant the injunction prayed for in this case.

HALLETT, J., (dissenting.) My construction of this contract is widely different from that given by Justice MILLER. I think that the judgment of the court should not be confined to section 1 of article 1 of the contract, but should cover the whole instrument; and, in order to bring out the true interpretation and meaning of the contract, it is proper to look at the situation of the parties. When this contract was made, the Chicago, Rock Island & Colorado Railway Company was engaged in building a road from the Kansas line through the state in this direction, with the intention to bring that road to this point, Colorado Springs, and also with the intention, under some circumstances, to carry the road to Denver direct. It was seen that if the road should be constructed to this point it would become necessary to connect with the two principal commercial cities in the state,—cities which, I believe, are regarded by railroad men as common points, to which freight rates are equal and also passenger rates; and, when they should arrive at this place with the road, it would become a question whether that road should be built from Colorado Springs to Pueblo, and from Colorado Springs to Denver, or whether an arrangement should be made with the Rio Grande Company for the use of its road between Denver and Pueblo; and, of course, if satisfactory arrangements could be made with the Denver & Rio Grande Company, it would be much cheaper for the new company, and would somewhat reduce the expenses of the old company, to make such an arrangement. Accordingly, this contract was made; and, as I understand

it, the road, considered in its physical character, the Chicago, Rock Island & Pacific Railway Company, acquired the use of the Denver & Rio Grande Railway between this point and Pueblo and Colorado Springs. More than in any other instance, I think, the railroad of a railroad company is the physical body of the corporation, in so far as any corporation may be said to have a physical existence, and a body which may be recognized. The body of the corporation is the railroad, and it represents the corporation, in that sense; and this was the contract of the road—the new railroad with the old railroad—for one connection at Colorado Springs, not a connection at Denver, Pueblo, or other point. If the contract which has since been made by the Rock Island Company with the Union Pacific Company, by which it has secured a line between Limon and Denver, had then been made, this contract would not have taken effect, because it is expressly provided in this instrument that, if the Chicago & Colorado Railway Company shall build a road to Denver, then the contract shall become void and ineffectual; and, of course, if the Chicago Company had acquired the right to use the Union Pacific road at that time, there would have been no occasion for the making of the contract. Moreover, if the complainant in this suit should now acquire a line going into Pueblo in the same manner that it has acquired the right to enter Denver by a distinct line, there would then be no use whatever for the Rio Grande road between Denver and Pueblo, and the use of it in the way in which it is mentioned in this contract, and all the provisions in this contract for estimating the cost of maintenance by wheelage, and all that, would become ineffectual. Now, as to this interpretation of this contract, I can find support in every clause of the agreement, but I do not care to refer to more than one of them. To go over the contract at length, and give consideration to each particular clause, would be a matter of great labor, and occupy a great deal of time, to no profit. The clause to which I refer is the third clause on page 13 of article 3 of the printed contract, which provides that "the Denver Company may admit any other company operating a connecting railway to the possession and use of said railway between Denver and South Pueblo, or any portion thereof, with itself and the Chicago Company, upon substantially the same terms as those set out in these articles." Now the Union Pacific road, which has since been acquired proportionately from Limon to Denver by the Rock Island Company, was then in existence. It is one of the roads referred to in this clause of the agreement, and the right to admit that road to the use of this road was reserved in this agreement to the Rio Grande Company. There is not a doubt of that in my mind. Furthermore, on the next page of this contract, it is said here in section 11: "This contract is intended to permit either party hereto to exchange business with other companies in carload lots or otherwise, and in the ordinary exchange of business in the cars of such other companies." The right here reserved to this exchange at the time of this contract was a right arising out of the use of the road from Limon to Denver, and it was provided for in this agreement. Now, if you look at this and other parts of this instrument, it seems to me

perfectly clear that the right acquired by the new company—the "Chicago Company," as it is called in the agreement—was the use of the Denver & Rio Grande Railroad between Denver and Pueblo, in connection with the line which they proposed to build. It was through a connection at Colorado Springs, and not elsewhere. It was by one connection, and no more. The Rock Island Company has since made another connection, and my Brother MILLER announces here that they may make any number of connections. If they acquire the control and use of all the lines that enter Denver, they may put the business of all those lines upon the yards and terminals of this company; they may put it anywhere upon the line of this road. I cannot agree in that construction of the agreement, but it is unnecessary for me to comment at length upon it. I must dissent from the opinion given by Justice MILLER, and when this cause comes up for final decision, as Brother MILLER will not be present, it will be for the consideration of the circuit judge.